UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. _____

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>TANNER PHARMA UK LIMITED, RAYMOND FAIRBANKS BOURNE A/K/A "BANKS" BOURNE, and MARY EVERETT WHITEHURST BOURNE A/K/A MOLLY BOURNE,<br><br>                  Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff FS Medical Supplies, LLC ("FSMS") brings this Complaint against Defendants Tanner Pharma UK Limited ("TPUK"), Raymond Fairbanks Bourne a/k/a "Banks" Bourne, and Mary Everett Whitehurst Bourne a/k/a Molly Bourne (together with Banks Bourne, the "Bourne Defendants").

## INTRODUCTION

1. This is a fraudulent conveyance case, brought because Defendant Raymond Fairbanks Bourne stripped TPUK of the cash needed to pay TPUK's just debts. Plaintiff, FSMS, sued TPUK and its corporate affiliate for breach of contract in April 2021. Mr. Bourne then directed TPUK to pay at least $100 million in dividends to himself and his wife, stripping the company of sufficient assets to pay FSMS. Under North Carolina's avoidable transfer statutes, the dividend payments must be unwound because (1) the dividends reflect numerous "badges of fraud," supporting the conclusion that they were intended to hinder, defraud or delay creditors; and (2) TPUK did not receive value for the dividends and their payment rendered TPUK insolvent

1

within the meaning of the relevant statutes. As a consequence, the dividends must be unwound and FSMS is entitled to preliminary and permanent injunctive relief preventing further dissipation of TPUK's assets.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because all parties are citizens of different states and foreign states, and the amount in controversy exceeds $75,000.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all Defendants reside in this District for the purposes of the venue statute.

## PARTIES

4. Plaintiff FS Medical Supplies, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Weatherford, Texas. FSMS has four members: Laird Q. Cagan, Jim Mao, and their respective spouses. Mr. Cagan and his spouse are domiciled in Texas. Mr. Mao and his spouse are domiciled in California.

5. Defendant Tanner Pharma UK Limited is a company organized under the laws of England and Wales. TPUK's principal place of business is in Charlotte, North Carolina, the location from which its activities are directed, controlled, and coordinated.

6. Defendant Raymond Fairbanks Bourne a/k/a "Banks" Bourne is an individual domiciled in Charlotte, North Carolina. He is the sole Director of TPUK, owning 75% of its shares. He directs, controls, and coordinates TPUK's activities from Charlotte, North Carolina.

7. Defendant Mary Everett Whitehurst Bourne a/k/a Molly Bourne is an individual domiciled in Charlotte, North Carolina. She is the wife of Defendant Raymond Fairbanks Bourne, and owns the remaining 25% of TPUK's shares.

# FACTS

## I. The Underlying Suit

8. In June 2020, TPUK signed a non-disclosure and non-circumvention agreement to evaluate whether to work with FSMS to distribute COVID-19 medical supplies. The purpose of the contract was to protect each party's prior business relationships from circumvention by the other party. TPUK promised that it "shall not conduct any business with . . . sources or contacts of [FSMS]" without FSMS's express written permission.

9. Upon seeing FSMS's product and pricing list, TPUK's President was ecstatic, writing to his team: "This is gold . . . . Well worth half the profits to have a supply partner like FS Medical."

10. In August 2020, TPUK identified a massive business opportunity to sell millions of COVID-19 antigen tests to the UK Government, but in order to compete for this opportunity TPUK urgently needed to ship a small batch of sample tests to the UK Government. TPUK immediately turned to FSMS, which was able to negotiate with its supplier, Zhejiang Orient Gene Biotech Co., Ltd. ("Orient Gene"), to re-route sample tests within days to provide to the UK Government. Given the small order size, Orient Gene charged FSMS a premium of $5.00 per unit; however, Orient Gene promised that larger orders would be available at a lower price and to rebate half the higher price should a larger order follow.

11. TPUK, its affiliate, and FSMS then signed a Distribution Agreement ("Agreement") on September 11, 2020 in which TPUK and the affiliate (collectively identified in the Agreement as "TANNER"), promised to buy COVID-19 antigen tests from FSMS unless "directed by FSMS" to buy directly from its supplier, and even then only "so long as the financial

3

arrangement" was "maintained as if TANNER purchased Covered Products directly from FSMS with a 50% gross profit participation to each Party."

12. TPUK, however, never intended to honor the Distribution Agreement. Within two weeks of signing the contract, TPUK secretly contracted with Orient Gene to buy the same test kits it had already promised to buy from FSMS. TPUK then deceived FSMS about its relationship with Orient Gene, lied to FSMS when asked about the contract with the UK Government and its progress, and provided FSMS with false and deceptive reconciliation sheets purporting to show a cost basis of $5.00 per unit while refusing to disclose the true cost of the kits.

13. On November 15, 2020, TPUK's principal, Steve Scalia, provided FSMS with a reconciliation sheet which contained false computations and deceptively understated the amount owed to FSMS. Even though FSMS had a right to payment under the Agreement, TPUK and its affiliates intentionally and deceptively cut FSMS out of its partnership with Orient Gene and the hundreds of millions of dollars in revenue generated through the sale of Orient Gene's products to the UK Government. FSMS suffered hundreds of millions of dollars in damages as a proximate result of TPUK's egregious conduct. FSMS's claims accrued beginning in September 2020.

14. FSMS asserted its right to payment in a letter sent on February 24, 2021 to TPUK, requesting "payment of the difference between the amount [TPUK] [] paid to FSMS, pursuant to the correct reconciliation sheets, and 50% [of] the correct gross profits calculated by using the actual amount paid by [TPUK] directly to Orient Gene." FSMS further requested documents showing the true purchase price of the goods from Orient Gene. TPUK responded on March 3, 2021 by refusing FSMS's demands.

15. FSMS filed a complaint in the Superior Court of California, County of Santa Clara on March 24, 2021, seeking damages for breach of contract. The case was removed to the United

States District Court for the Northern District of California on April 26, 2021. TPUK moved to dismiss the case not on the merits, but for lack of personal jurisdiction. After TPUK's personal jurisdiction motion in that court was successful, FSMS refiled in this District on September 23, 2021. *See* W.D.N.C. Case No. 3:21-cv-00501-RJC-WCM (the "Underlying Action"). After jurisdictional discovery, FSMS filed an Amended Complaint. *Id.* at ECF 40. As relevant here, FSMS's Amended Complaint seeks at least $200,000,000 in damages for breach of contract and treble damages for the defendants' violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"). A redacted copy of that Amended Complaint is attached as **Exhibit A** and each and every paragraph of the entire Amended Complaint is incorporated by reference as fully as if it were written out in the body of this Complaint.[1]

## II. TPUK Dissipates Assets

16. During calendar year 2021, TPUK issued approximately $100 million in dividends to its two shareholders, the Bourne Defendants.

17. FSMS discovered this transfer only after TPUK filed its required financial statements for that year—six months late. As a company registered in the United Kingdom, TPUK is required to file financial statements annually. The deadline for TPUK's 2021 statement was September 30, 2022. TPUK failed to meet that deadline and did not file until March 31, 2023, *after* in the Underlying Action FSMS had already alerted the Court to the missing filing on January 10, 2023 and *after* the Court ordered a status conference in the Underlying Action. TPUK thus hid its financial condition, its insolvency, and the whereabouts of $100 million at a time when it did not have adequate funds to pay the damages sought by FSMS.

---

[1] In the Underlying Action, TPUK opposed the public disclosure of certain pricing information. The unredacted version of the Amended Complaint, filed under seal, is available to the Court on PACER. *See* W.D.N.C. Case No. 3:21-cv-00501-RJC-WCM, ECF 40.

5

18. TPUK has refused to explain why it delayed its disclosure, what happened to the $100 million, and what other dividends have been issued. Defendant Raymond Fairbanks Bourne has also refused to disclose what happened to the $100 million. Notably, as the sole director of TPUK, Mr. Bourne had exclusive power to decide whether TPUK would issue dividends to its shareholders (*i.e.,* to Mr. Bourne himself and his wife). Further, the $100 million in dividends was more than the entire profit earned by TPUK during 2021, and more than 80% of *all* cash generated from operating activities. The dividends left TPUK with inadequate assets to satisfy the amount of FSMS's claim, which had indisputably accrued at the time the dividends were issued.

19. All or part of the $100 million in dividends were issued after FSMS threatened to file suit in February 2021.

20. Defendants have refused to disclose where the money is and have refused to agree to maintain the status quo pending resolution of FSMS's claims.

## FIRST CLAIM
### (Transfer With Intent To Hinder, Delay or Defraud – N.C. Gen. Stat. § 39-23.4(a))

21. FSMS repeats and realleges the foregoing allegations as if set forth herein.

22. FSMS is a "creditor" of TPUK as defined by N.C. Gen. Stat. § 39-23.1(4): "A person that has a claim."

23. Defendant Raymond Fairbanks Bourne caused TPUK to transfer at least $100 million to himself and his wife, Mary Everett Whitehurst Bourne, with the intent to hinder, delay, or defraud a creditor of TPUK.

24. The following "badges of fraud" support the inference of Mr. Bourne's intent to hinder, delay, or defraud a creditor (*i.e.*, FSMS):

a. **The transfer was to an insider** – Defendant Raymond Fairbanks Bourne is TPUK's sole director. As such he is an insider by operation of N.C. Gen. Stat. § 39-23.1(7)(b)(1) and (3). Defendant Mary Everett Whitehurst Bourne is an insider by operation of N.C. Gen. Stat. § 39-23.1(7)(b)(6).

b. **The transfer was concealed** – TPUK concealed the transfer for nearly a year, first by refusing to provide financial information during jurisdictional discovery in the Underlying Action and then by inexplicably delaying for six months the required filing of its 2021 financial statements. TPUK has further rebuffed FSMS's continuing attempts to find out where the money is, even though FSMS is prosecuting a claim against TPUK for hundreds of millions of dollars.

c. **Before the transfer was made, the debtor had been sued** – FSMS threatened suit by letter dated February 24, 2021, and filed suit against TPUK on March 24, 2021. On information and belief, TPUK issued most or all of the $100 million in dividends after those events.

d. **The transfer constituted a large proportion of the debtor's assets** – TPUK transferred $100 million in dividends in 2021. At the end of that year, its remaining net assets were $55.9 million. The dividends thus constituted approximately 64% of the net reported assets that TPUK would have had had it not issued the dividends. The dividends paid in 2021 also correspond to 71% of TPUK's combined net income for 2020 and 2021, 84% of TPUK's combined operating cash flows for 2020 and 2021, and 83% of the cash TPUK would have had on hand had it not issued the dividends.

e. **The debtor concealed assets** – TPUK concealed the dividends, and the Bourne Defendants have refused to disclose the location of the money. Discovery is needed

at this juncture to determine the extent to which Defendants have further removed and concealed assets.

  f. **The debtor received no value** – TPUK received no consideration for the dividends.

  g. **The debtor became insolvent after the dividend was declared** – At the time of the dividends, FSMS's contract and UDTPA claims had accrued. The value of the contract claim alone far exceeded $100 million. The issuance of the dividends thus pushed TPUK into insolvency, leaving it without any hope of satisfying the judgment sought.

  h. **The debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due** – TPUK received no value in exchange for the dividend. At the time of transfer, Defendants were well aware of FSMS's cause of action and claims for payment rightfully owed to FSMS.

  i. **The debtor did not transfer the assets in the course of legitimate estate or tax planning** – Defendants have offered no evidence supporting any suggestion that the dividends were issued in the course of legitimate estate or tax planning.

**SECOND CLAIM**
**(Transfer Without Receiving Reasonably Equivalent Value –**
**N.C. Gen. Stat. §§ 39-23.4(a)(2) and 23.5)**

25. FSMS repeats and realleges the foregoing allegations as if set forth herein.

26. Defendant TPUK transferred at least $100 million to Defendant Raymond Fairbanks Bourne and Defendant Mary Whitehurst Bourne without receiving reasonably equivalent value in exchange for the transfer.

27. TPUK was engaged in a business for which its remaining assets were unreasonably small in relation to the business.

28. At the time TPUK issued the dividends, TPUK was insolvent because of the accrual of FSMS's claims, which included a contract claim and a separate UDTPA claim for treble damages. The value of the contract claim alone exceeded TPUK's net assets, even before it issued the dividends.

29. In the alternative, TPUK became insolvent as a result of issuing the dividends. After TPUK issued the dividends, TPUK was left with $55.9 million remaining net assets, which was insufficient to satisfy FSMS's accrued claims.

## THIRD CLAIM
### (Constructive Trust)

30. FSMS repeats and realleges the foregoing allegations as if set forth herein.

31. A constructive trust has arisen and is necessary to prevent the unjust enrichment of the Bourne Defendants or their transferees, who hold cash issued as dividends by TPUK or the proceeds of such cash, or property purchased with such cash, as a result of the fraudulent conveyances described above, making it inequitable for any of them to retain such cash or property against the claim of FSMS, the beneficiary of the constructive trust so imposed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. Avoidance of all dividends or other avoidable transfers by TPUK to the extent necessary to satisfy FSMS's claim;

b. A temporary restraining order and a preliminary injunction ordering that, until judgment is made and executed in the present action (1) TPUK shall not issue further dividends transferring any property to Defendants Raymond and/or Mary Bourne; (2) Defendants

Raymond and Mary Bourne, and any person acting in concert with them or under their direction, shall not transfer any property directly or indirectly traceable to or comingled with any dividends issued by TPUK;

c. Imposition of a constructive trust on funds transferred by TPUK to the Bourne Defendants or property that was comingled with or traceable to such transfers;

d. An accounting of all funds traceable to the avoidable transfers at issue in this case;

e. Such additional provisional remedies as the Court may determine just and proper to preserve its power to effectuate a judgment, including, without limitation, attachment, garnishment, appointment of a receiver, arrest and bail;

f. Costs and attorney's fees;

g. Prejudgment interest; and

h. Such other relief as justice may require.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

This is the 20th day of September, 2023.

| | |
|---|---|
| */s/ Kent A. Yalowitz*<br>Kent A. Yalowitz (*pro hac vice forthcoming*)<br>N.Y. State Bar No. 2188944<br>Carmela T. Romeo (*pro hac vice forthcoming*)<br>N.Y. State Bar No. 5058151<br>**ARNOLD & PORTER**<br>  **KAYE SCHOLER LLP**<br>250 W 55th Street<br>New York, NY 10019<br>212-836-8000<br>kent.yalowitz@arnoldporter.com<br>carmela.romeo@arnoldporter.com<br><br> – and –<br><br>Eliseo R. Puig (*pro hac vice forthcoming*)<br>Colorado State Bar No. 49022<br>**ARNOLD & PORTER**<br>  **KAYE SCHOLER LLP**<br>1144 Fifteenth Street, Suite 3100<br>Denver, CO 80202<br>303-863-1000<br>eliseo.puig@arnoldporter.com | */s/ Lex M. Erwin*<br>Lex M. Erwin<br>N.C. State Bar No. 34619<br>David A. Luzum<br>N.C. State Bar No. 41398<br>Kevin Y. Zhao<br>N.C. State Bar No. 53680<br>**MAYNARD NEXSEN PC**<br>227 W. Trade Street, Suite 1550<br>Charlotte, NC 28202<br>Telephone: (704) 339-0304<br>Facsimile: (704) 338-5377<br>lerwin@maynardnexsen.com<br>dluzum@maynardnexsen.com<br>kzhao@maynardnexsen.com<br><br>*Counsel for Plaintiff* |