UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-000598-RJC-WCM

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TANNER PHARMA UK LIMITED, ) | **ORDER** |
| RAYMOND FAIRBANKS BOURNE, and ) | |
| MARY EVERETT WHITEHURST BOURNE ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff FS Medical Supplies' Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. No. 5), and Motion for Discovery to be Conducted Early. (Doc. No. 7). For the reasons stated herein, the Motions are **DENIED**.

**I.    OVERVIEW**

FS Medical Supplies ("FSMS") filed the instant fraudulent conveyance action to halt and freeze dividends issued by Tanner Pharma UK Limited ("TPUK") to its owners, Raymond Fairbanks ("Banks") Bourne and Mary Everett ("Molly") Whitehurst Bourne. In early 2021, FSMS filed suit against TPUK for breach of contract, alleging that TPUK deprived FSMS of more than $100 million in shared profits by entering into a direct contract with a third party. After the parties' relationship deteriorated – and around the time FSMS filed its contract action – TPUK disbursed nearly $100 million in dividends to the Bournes, leaving TPUK with little cash. FSMS now argues that unless the Court enjoins TPUK and the Bournes, any judgment entered against TPUK in the parties' contract action may be unrecoverable. Because FSMS fails to demonstrate irreparable harm in the absence of an injunction, however, this Court cannot grant FSMS the relief it seeks.

1

## II. BACKGROUND

This case arises from a contractual relationship between FSMS, TPUK, and TannerGAP, Inc., formed in the early days of the COVID-19 pandemic.[1] Seeking to leverage their respective relationships, the parties agreed that FSMS would source medical supplies from its industry contacts in China, TannerGAP and TPUK would connect FSMS with healthcare distributors, and the parties would share the profits equally. Shortly after entering into contracts with FSMS, however, TPUK entered into a direct contract with Orient Gene, one of FSMS's suppliers, to sell COVID tests to the government of the United Kingdom. Over the next two years, the UK government awarded TPUK nearly $2 billion in contracts.

FSMS sued TannerGAP, TPUK, Banks Bourne, and Stephen John Scalia[2] over that relationship, alleging breach of the parties' two agreements, breach of the implied covenant of good faith and fair dealing, and violation of North Carolina's Unfair and Deceptive Trade Practices Act. The Court recently adopted the Magistrate Judge's M&R in that related case ("Tanner I"), *see FS Medical Supplies, LLC v. Tanner GAP, Inc., et al.*, No. 321CV00501RJCWCM, 2023 WL 6396050, at *8 (W.D.N.C. Sept. 30, 2023), allowing FSMS's breach of contract claims to proceed but dismissing its claims under the Unfair and Deceptive Trade Practices Act.

FSMS now brings new claims against TPUK, Banks Bourne, and Molly Bourne, alleging that the Bournes fraudulently issued dividends from TPUK to themselves after the parties' relationship became strained. In October 2020, FSMS learned that TPUK had contracted directly

---

[1] TPUK and TannerGAP hold themselves out together as Tanner Pharma Group.

[2] Raymond Fairbanks ("Banks") Bourne is the founder and CEO of Tanner Pharma Group, the sole officer of TannerGAP, and the sole Director of TPUK. He indirectly owns 100% of the shares of TannerGAP and 75% of the shares of TPUK. His wife, Mary Everett Whitehurst ("Molly") Bourne, owns the remaining 25%. Stephen Scalia is the president of Tanner Pharma Group.

2

with Orient Gene and the UK government to sell COVID test kits. Over the next several months, FSMS began to suspect that TPUK was paying FSMS less than it owed under the parties' contract, and on February 24, 2021, FSMS demanded full payment from TPUK. When TPUK refused to pay, FSMS filed suit.[3] But before, during, and after these events, TPUK was busy issuing dividends. From January 29 to February 2, 2021, TPUK disbursed $61,050,000, and from April to September, another $35,650,000, all to its two shareholders: Banks and Molly Bourne.

TPUK disbursed its dividends in relative secrecy, missing the United Kingdom's September 30, 2022, deadline for filing required 2021 financial disclosures. In fact, TPUK did not release any information until the UK Registrar of Companies announced on March 7, 2023, that continued failure to file the required information would result in TPUK's dissolution, with all its property ceding to the Crown. (Doc. No. 6-9). TPUK filed the report several weeks later, and now blames its inactivity on a lengthy audit process. When TPUK did file its report on March 31, 2023, FSMS learned, for the first time, of the dividend disbursals.

FSMS further learned – from TPUK's 2022 financial disclosures, filed timely on September 29, 2023 – that TPUK later issued another $100 million in dividends to the Bournes on March 8, 2022. The combined disbursals left TPUK with approximately $10.5 million in reported net assets, while TPUK faced, according to FSMS, "at least £75 million (approximately $102 million)" in contingent liabilities for its actions at issue in Tanner I. TPUK represents, however, both in a memorandum before the Court and in oral argument, that it will "issue no further dividends while FSMS I is pending without leave of Court." (Doc. No. 27 at 2).

---

[3] FSMS first filed suit in California state court on March 24, 2021, and TannerGAP and TPUK removed the action to the United States District Court for the Northern District of California. The Northern District of California dismissed the case for lack of personal jurisdiction on July 12, 2021, and FSMS filed Tanner I in this Court on September 23, 2021.

FSMS now moves, several months after first discovering the initial disbursals, for a temporary restraining order and preliminary injunction to halt any future dividends and freeze dividends previously disbursed to the Bournes.

## III. STANDARD OF REVIEW

Temporary restraining orders and preliminary injunctions are extraordinary remedies "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and may never be awarded "as of right." *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The standard for granting either a TRO or a preliminary injunction is the same and is well established. *Id.* The party seeking the preliminary injunction must demonstrate all of the following: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019). "An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010).

## IV. DISCUSSION

FSMS must demonstrate each of the four *Winter* factors to justify preliminary relief, and a failure to demonstrate any one is fatal. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Considering FSMS's relative delay in seeking injunctive relief and the legal remedies available to FSMS under North Carolina law, FSMS fails to make a clear showing of imminent and irreparable injury in the absence of preliminary relief, and so fails to demonstrate it is entitled

4

to such an extraordinary remedy. *See Winter*, 555 U.S. at 20; *Mountain Valley Pipeline, LLC* , 915 F.3d at 216 (4th Cir. 2019).[4]

To demonstrate a right to preliminary relief, FSMS must make a "clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC*, 915 F3d at 216 (*quoting Direx Israel, Ltd. v. Breakthrough Med. Corp*., 952 F.2d 802, 812 (4th Cir. 1991)) (internal quotation marks omitted). The claimed harm must also be irreparable – that is, harm that "cannot be fully rectified by the final judgment after trial." *Id.* (quoting *Stuller, Inc. v. Steak N Shake Enters*., 695 F.3d 676, 680 (7th Cir. 2012)).

FSMS argues that it will suffer irreparable harm without a court order freezing further dissipation of the $200 million at issue, because FSMS's Tanner I claims exceed the cash TPUK currently has on hand and, without any oversight, the Bournes may disperse their cash beyond reach. The horses left the barn when TPUK distributed $200 million to the Bournes, FSMS argues, and the requested injunction will corral them before they wander any further.

Though "[m]onetary relief typically may be granted as easily at judgment as at a preliminary injunction hearing, and a party does not normally suffer irreparable harm simply

---

[4] TPUK and the Bournes suggest the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc*., 527 U.S. 308 (1999) prohibits this Court from enjoining Defendants altogether. Not so. The Court in *Grupo Mexicano* held that a district court had no authority to issue a preliminary injunction "preventing [parties] from disposing of their assets pending adjudication of a contract claim for money damages," *id.* at 333, but the Court carved out equitable claims and the law of fraudulent conveyances. *Id.* at 322 ("[W]e suspect there is absolutely nothing new about debtors' trying to avoid paying their debts, or seeking to favor some creditors over others …. The law of fraudulent conveyances … was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not."). The Fourth Circuit recognizes *Grupo Mexicano*'s limitations: "*Grupo Mexicano*'s holding is carefully circumscribed … The Court was not presented with, nor did it choose to address, a situation in which equitable remedies were claimed." *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999). *Grupo Mexicano* left a gap, and *Rahman* fills it. This Court thus has authority to issue preliminary injunctions where, as here, a party requests an equitable remedy.

5

because it has to win a final judgment on the merits to obtain monetary relief," a preliminary injunction may be appropriate where "damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994); *see also U.S. ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327, 1331 (4th Cir. 1989) (affirming finding of irreparable harm where "it is probable that in the absence of an injunction [Defendant] would have no assets left to satisfy a judgment in this case"); *but see Philips Med. Sys. v. Tec Holdings, Inc.*, No. 3:19-CV-373-MOC-DCK, 2022 WL 10208557, at *19 (W.D.N.C. Oct. 17, 2022) (denying injunction where "the parties vigorously dispute the actual damages").

FSMS fails to show that the relief it seeks now will be unavailable if FSMS prevails in Tanner I. If FSMS secures a judgment and TPUK is insolvent, FSMS can then argue that the transfers at issue were fraudulent and voidable and receive the money damages it seeks. *See* N.C. Gen. Stat. §§ 39-23.4, 39-23.5; *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment."). Moreover, TPUK represents through counsel that, though it continues to pursue business opportunities beyond COVID test kits, it will issue no further dividends without leave of this Court while Tanner I is pending. (Doc. No. 27 at 2; Doc. No. 27-4). Such a guarantee, relied upon by the Court, serves to maintain the status quo, at least in part, that FSMS seeks to preserve through this motion. *See Di Biase*, 872 F.3d at 231 ("The principal function of a preliminary injunction is to maintain the status quo.").

FSMS argues that the Bournes moving money out of TPUK indicates they will secrete away the $200 million, perhaps into international banks or disreputable funds. But "issuing a

6

preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Di Biase*, 872 F.3d at 230 (quoting *Winter*, 555 U.S. at 22). The concern that the Bournes could transfer their assets beyond reach is a "remote and speculative" possibility, and, in any event, the record refutes that narrative; the Bournes transferred their $200 million not into offshore accounts, but into the Western District of North Carolina, where they were already defending a lawsuit. *See Mountain Valley Pipeline, LLC*, 915 F3d at 216; *Di Biase*, 872 F.3d at 230. The horses have left the barn, indeed, but nothing suggests they will jump the fence and leave the pasture.

FSMS also fails to show that the harm it seeks to avoid is imminent. FSMS learned of the dividend disbursals in March 2023, but filed this action on September 20, 2023, and filed the instant motion a day later. A plaintiff's failure to act with haste in seeking preliminary relief belies claims of emergency. *See Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) ("Since an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required.") (quoting *Skehan v. Bd. of Trustees of Bloomsburg State College*, 353 F. Supp. 542, 543 (M.D. Pa. 1973)); *Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. A preliminary injunction requires showing 'imminent' irreparable harm.") (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)); *Southech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410, 420 (E.D.N.C. 2006) ("[T]he six to nine week delay between plaintiff's discovery of defendant's competitive activities and its filing suit weighs against injunctive relief."); *iEntertainment Network, Inc. v. Hammett*, No. 5:14-CV-

7

157-BO, 2014 WL 3891319, at *3 (E.D.N.C. Aug. 7, 2014) ("A delay in seeking preliminary injunctive relief is indicative of a lack of imminent and irreparable harm to the plaintiff."). FSMS fails, therefore, to demonstrate that the harm it may face is imminent.

Because FSMS fails to demonstrate imminent and irreparable harm, the Court need not address FSMS's likelihood of success on the merits, the balance of equities between FSMS, TPUK, and the Bournes, or the public interest. The Court also finds that without a showing of irreparable harm, FSMS fails to demonstrate good cause for early discovery, and so is not entitled to such discovery under Local Rule 16.1(f). This action will proceed without special intervention.

## V. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, (Doc. No. 5), and Plaintiff's Motion for Discovery to be Conducted Early, (Doc. No. 7), are **DENIED**.

**SO ORDERED.**

Signed: October 13, 2023

Robert J. Conrad, Jr.
United States District Judge